*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0721**

State of Minnesota,
Respondent,

vs.

Domenico Nicolai Newton,
Appellant.

**Filed May 13, 2024
Affirmed
Ross, Judge**

Dakota County District Court
File No. 19HA-CR-22-1135

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kathryn M. Keena, Dakota County Attorney, Jessica A. Bierwerth, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Ross, Judge; and Bjorkman, Judge.

**NONPRECEDENTIAL OPINION**

**ROSS**, Judge

Domenico Newton, whose prior crime-of-violence conviction rendered him ineligible to possess a firearm, lost about $700 to an acquaintance gambling on a video game and then, brandishing a handgun, demanded the money back. In advance of Newton's

consequent trial for illegal possession of a firearm, the district court granted the state permission to impeach Newton with his prior felony convictions if he chose to testify. Newton did not testify and now appeals, arguing that the district court made its impeachment decision in error. Because the district court acted within its discretion to admit the impeachment evidence, we affirm.

## FACTS

Appellant Domenico Newton and two acquaintances started playing a UFC video game in the basement of a Hastings home belonging to the aunt of one of the competitors at about 10:00 a.m. on a Sunday in April 2022. The trio continued playing "[a]t least, like, 12 hours straight" until early the next morning. The men had been wagering, with bets starting at $20 and rising to $100 per game. One of them "[p]retty much lost all of his money" and went upstairs, leaving Newton and the overall winner to continue playing. The winner likewise eventually "took all the money" Newton had, successfully wagering against him until Newton had given him, or owed him, as little as $400 or as much as $700 (based on the imprecise trial testimony of the winner).

Angry and frustrated, Newton asked for his money back. The victor gave him some of it back, but, as Newton was preparing to leave, the man successfully propositioned Newton to play one more game, wagering $100. Newton agreed, and lost. Again Newton asked for his money back, but this time the man refused.

Newton then drew a handgun and held it at his side. He told the man that he could either give Newton the money or Newton would take it. The two argued. The third man returned to the basement, saw Newton holding the gun, and tried to mediate. He urged

Newton to put the gun away and urged the other to return some of Newton's money to him. The man handed the money over to Newton and Newton left the house. One of the men relayed the story to his friend's aunt upstairs and asked her to telephone the police.

Police found and arrested Newton. They traced his route from the house and found a loaded, semiautomatic handgun with an extended magazine. Forensic evidence indicated that the gun possessed DNA matching Newton's.

The state charged Newton with first-degree aggravated robbery, possession of a firearm by an ineligible person, and possession of a firearm lacking a serial number. Newton disclosed that he intended to assert the affirmative defenses of self-defense and necessity. The state disclosed that it intended to use four of Newton's prior felony convictions to impeach his testimony at trial. The prior convictions included a second-degree assault in 2016, a second-degree assault in 2019, possession of a firearm by an ineligible person in 2019, and threats of violence in 2019. The district court authorized the state to use the convictions as impeachment, but only in a limited, generic fashion; the prosecutor could ask only, "Isn't it true, Mr. Newton, that you had been previously convicted of crimes that were at the felony level? Or that were punishable by over a year in prison?"

Newton chose not to testify. The jury heard the evidence outlined in the facts just recounted, and it found him guilty of possessing a firearm as an ineligible person but not guilty of robbery or possessing a firearm without a serial number. The district court sentenced Newton to serve 60 months in prison.

Newton appeals.

**DECISION**

Newton challenges his conviction by contesting the district court's decision to allow the state to introduce evidence of Newton's prior convictions to impeach his testimony. We review a district court's decision regarding the admissibility of prior convictions for an abuse of discretion. *See State v. Reek*, 942 N.W.2d 148, 162 (Minn. 2020). The district court has discretion to permit the state to impeach a criminal defendant's testimony using prior convictions under certain conditions. The convictions must have been punishable by more than one year in prison, the convictions had to have occurred within the prior ten years, and the district court must find that the evidence of the convictions would be more probative than prejudicial. *See* Minn. R. Evid. 609(a)(1), (b). We are satisfied that the district court's decision fell well within its discretion.

The trial circumstances inform our judgment that the district court acted within its discretion. First, the district court properly recognized that it should consider the five factors set out in *State v. Jones* in deciding whether the probative value of evidence of Newton's prior felony convictions outweighs its prejudicial effect, *see* 271 N.W.2d 534, 538 (Minn. 1978), and the district court considered and made specific findings on the *Jones* factors here. Although Newton questions the district court's reasoning in applying each factor, he does so unconvincingly. He does not contend that the district court's findings were clearly erroneous or that it misapplied the law. He appears to ask this court to weigh the factors *de novo*, but our review standard on this issue is instead deferential to the district court. And second, the district court directed the state to offer the conviction evidence only in a substantially sanitized fashion, free of even the mention of violence; it allowed the

4

prosecutor to question Newton only as to whether he had committed "crimes that were at the felony level." Newton fails to demonstrate that the district court abused its discretion.

**Affirmed.**